**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

LUCAS SILVA, individually and
on behalf of others similarly situated,

    Plaintiff,

vs.                                      CASE NO: 9:19-cv-81442-RLR

JAMES RIVER INSURANCE COMPANY,
an Ohio Corporation,

    Defendant.
_____/

**JAMES RIVER'S MOTION TO COMPEL APPRAISAL
AND DISMISS CLASS ACTION COMPLAINT**

    JAMES RIVER INSURANCE COMPANY ("James River"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to compel appraisal as mandated by the insurance policy and dismiss the putative class action complaint (DE 1-1), or, alternatively, stay this action pending appraisal, and in support states:

**INTRODUCTION**

    Three district courts have recently held that a dispute over ACV is subject to appraisal. The Eleventh Circuit has also required appraisal under the circumstances. The terms of the James River policy also compel appraisal. As required under the insurance contract and commensurate with the law, James River respectfully requests this Court enforce the policy's valid and binding appraisal provision.

**STATEMENT OF UNDISPUTED FACTS**

On 7/30/2016, Lucas Silva was involved in an accident in his vehicle. (DE 1-1, ¶18.)[1] Silva reported the accident to James River and filed a claim for property damage under the policy. (*Id.*) James River declared Silva's vehicle a total loss. (*Id.*, ¶19.)

The policy requires payment of actual cash value ("ACV"). (DE 1-1, ¶1.) James River determined that the ACV for Silva's vehicle was $9,401.54. (*Id.*, ¶22; *see also*, DE 1-1, pg. 50.) After subtracting the $1,000 deductible under the policy, James River remitted payment to Silva in the amount of $8,401.54. (*Id.*, ¶22.)

Silva claims James River underpaid his claim and breached the policy by excluding title transfer fees, registration fees, and local fees in calculating his ACV. (DE 1-1, ¶¶3, 4, 27, 28, 29, and 30.) More specifically, Silva claims James River failed to pay a title transfer fee of $75.25, failed to pay a plate transfer fee of $4.50, failed to pay a registration fee of $225.00, and failed to pay "local fees" in some undetermined amount. (*Id.*, ¶¶27, 28, 29, 30.) Silva further seeks additional sales tax on the ACV. (*Id.*, ¶42, and pg. 17, ¶3.)

Silva sued because James River allegedly issued payment for total loss claims to him and the unnamed class members, but improperly excluded title fees, registration fees, local fees, and underpaid sales tax. (DE 1-1, ¶¶2, 3, 16, 19, 22, 32, 33, 38, 42, 44, and pg. 17, ¶3.) Silva seeks to certify a class of similarly situated James River insureds, and asserts claims for breach of contract and declaratory relief on behalf of himself and the putative class. (*Id.*, ¶¶45-67, 73-82, and pgs. 15-16, ¶¶1-14.) Silva also seeks an award of attorneys' fees under Fla. Stat. § 627.428. (*Id.*, ¶¶72 and pg. 16, ¶5.)

---

[1] Silva mistakenly alleges the year of the accident was 2018, rather than 2016. As is evident from the property loss paperwork attached to the complaint, however, the loss occurred in July 2016. (*See* DE 1-1, pgs. 23-24, identifying various "listing date[s]" in July 2016; pg. 50, identifying the "[d]ate of [l]oss" as "07/30/2016;" and, pg. 54, identifying the "[l]oss [d]ate" as "07/30/2016.")

**THE JAMES RIVER POLICY**

James River's payment obligations are governed by the terms of the insurance contract. In pertinent part, the policy's insuring agreement provides:

**SECTION II – PHYSICAL DAMAGE COVERAGE**

**A.    Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   …

   **c.    Collision Coverage**

   Caused by:

   **(1)**   The covered "auto's" collision with another object;

   …

(DE 1-1, pgs. 31-32.) Elsewhere, the James River policy defines its limit of insurance for a covered loss as follows:

**SECTION II – PHYSICAL DAMAGE COVERAGE**

**C.    Limit Of Insurance**

1. The most we will pay for "loss" in any one "accident" is the lesser of:

   **a.**   The actual cash value of the damaged or stolen property as of the time of the "loss"; …

3. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

(DE 1-1, pg. 33.)

In the event of disagreement over the amount of loss, the policy expressly provides:

**SECTION III – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

    **A.**    **Loss Conditions**

        **1.**    **Appraisal**

> ***If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser.*** The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
>     **a.**    Pay its chosen appraiser; and
>
>     **b.**    Bear the other expenses of the appraisal and umpire equally.
>
> If we submit to an appraisal, we will still retain our right to deny the claim. …

(DE 1-1, pg. 33, bold italics added.) Moreover, the policy explicitly prohibits Silva from filing suit against James River absent full compliance with all policy terms, including the mandatory appraisal requirement:

**SECTION III – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

    **A.**    **Loss Conditions** …

        **3.**    **Legal Action Against Us**

> No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

(DE 1-1, pg. 34.)

On 9/19/2019—more than three years after James River paid Silva's claim—Silva filed this action. (DE 1-1.) On 11/11/2019, James River invoked its right to an appraisal by sending

Silva a letter, through his counsel of record in this case, notifying him that it was invoking its right to appraisal as mandated by the policy. A copy of the notice is attached as Exhibit "A."

## ARGUMENT AND CITATION OF AUTHORITY

**I.  THE COURT SHOULD COMPEL PLAINTIFF TO PROCEED WITH APPRAISAL AND DISMISS SILVA'S ACV CLAIMS.**

Appraisal clauses in insurance policies "are valid and binding upon the parties if they are appropriately invoked." *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1202 (Fla. 3d DCA 1995) (citing *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934)). It is "well-established" that appraisal clauses are treated as "binding arbitration agreements" under Florida law." *Id.* Indeed, the "general, even overwhelming, preference in Florida for the resolution of conflicts [is] through any extra-judicial means … for which the parties have themselves contracted." *Id.* This "principle has particular applicability" in cases "in which a great deal of judicial resources which might otherwise be required in resolving the factual and legal issues … would be saved at the threshold by a relatively swift and informal decision by the appraisers as to the amount of the loss." *Id.*

Florida law recognizes that even though an appraisal clause includes the word "may," the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, "neither party has the right to deny that demand." *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. 3d DCA 1994) (interpreting identical appraisal clause as the one at issue here); *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. 3d DCA 1994) (holding that the trial court reversibly erred by denying motion to compel appraisal and noting that "appraisal provisions are deemed to be conditions precedent to recovery under the insurance policies"). Accordingly, "[a] motion to compel appraisal should be granted whenever the parties have agreed to appraisal and the court entertains no doubt that such an agreement was made." *Almeria*

*Park Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 18-20609, 2018 WL 8193773, at *3 (S.D. Fla. May 24, 2018) (internal citations omitted).

Here, under the clear terms of the insurance policy, Silva and James River agreed to resolve all disputes over the amount of the loss by appraisal. To be certain, the policy expressly provides that if the parties "disagree on the amount of 'loss,'" that either party has the right to demand an appraisal, and that "[a] decision agreed to by any two [appraisers] will be binding." (DE 1-1, pg. 33.) Silva's allegations definitively confirm that the parties disagree over the "amount of loss," which is based on James River's determination of ACV. Accordingly, this Court must enforce the valid and binding terms of the appraisal provision.

## II. SILVA'S CLAIM THAT JAMES RIVER UNDERPAID ACV IS SUBJECT TO APPRAISAL.

Florida courts have held that "when [an] insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014). While "issues of coverage and liability under an insurance policy are for the court or jury, respectively," questions "regarding the amount of loss to be covered under the policy is subject to appraisal if so provided in the insurance policy." *State Farm Fla. Ins. v. Hernandez*, 172 So. 3d 473, 476 (Fla. 3d DCA 2015). Further, under Florida law, "[a]ppraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions which courts may enforce if there is an arbitrable issue." *Giminez v. Am. Sec. Ins. Co.*, No. 8:08-cv-2495, 2009 WL 257540, at *1 (M.D. Fla. Feb. 3, 2009) (citing *U.S. Fid. Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. 3d DCA 1999)). Importantly, such "arbitrable" issues include questions "of actual cash value and amount of loss." *Id.*

Several recent Florida courts have compelled appraisal for ACV claims under identical circumstances. Most recently, in *McGowan v. First Acceptance Ins. Co., Inc.*, ___ F. Supp. 3d ___, 2019 WL 5788336 (M.D. Fla. Aug. 14, 2019), the district court compelled appraisal and dismissed a putative class action lawsuit that alleged that an insurer underpaid total loss claims by failing to include registration fees, title fees, and sales tax in its payment. There, like here, the policy included a mandatory appraisal provision which provided that "[i]f we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss." *Id.* at *2. Rather than invoke the appraisal provision, the plaintiff filed suit against the insurer. Dismissing the action and compelling appraisal, the *McGowan* court explained that the issue of inclusion of registration fees, title fees, and sales tax "present[s] no coverage issue and only raise questions regarding the amount of loss, [so] that appraisal is the appropriate (and contractually-mandated) mechanism for resolving this dispute." *Id.* at *3. Moreover, construing other conditions of the policy, the court explained that the policy mandated appraisal:

> The Policy expressly requires compliance with the appraisal process as a condition precedent to suing [the insurer] over a disputed loss amount. The Policy's "Legal Action Against Us" provision states that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this policy." … And the Policy provides that [the insurer] is not required to make payment for any loss based on damage to the insure automobile unless the insured has fully complied with the Policy terms. … ***Thus, [the insured] cannot maintain his individual claim nor can he purport to represent the interests of the unnamed class members absent compliance with the Policy terms requiring appraisal.***

*Id.* at *4 (emphasis added).[2]

In two similar putative class actions from the Southern District of Florida, where insureds alleged their insurers improperly calculated ACV by, *inter alia*, excluding dealer overhead and profit from payments on total loss claims, the courts granted the insurers' motion to compel

---

[2] Counsel for the insured in that case is the same counsel representing Silva here.

appraisal. *See Bloomgarden v. Allstate Fire & Cas. Co.*, No. 18-62059, 2019 WL 2245475 (S.D. Fla. Mar. 15, 2019), *adopted in part and rejected in part*, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019); *accord*, *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-61860, 2019 WL 2245564 (S.D. Fla. Mar. 28, 2019). The relevant policy provisions concerning appraisal in *Bettor* and *Bloomgarden* are identical to those in James River's policy. In both cases, the magistrate relied upon *Moore v. Travelers*, 321 Fed. Appx. 911 (11th Cir. 2009), which affirmed an order compelling appraisal and dismissing a putative class action where the plaintiff alleged that an insurer wrongfully withheld contractor costs from ACV payments in a homeowner's policy dispute. The Eleventh Circuit held that an identical appraisal provision required the insured "to first comply with the appraisal provision to determine his amount of loss"; because he had not done so, his "complaint fail[ed] to state a claim for which relief can be granted." *Id.* at 913.

In *Bettor* and *Bloomgarden*, the plaintiffs argued the dispute was outside the appraisal provision because they did not challenge the amount of the deductions but instead presented a legal/coverage question of whether the deductions could be taken at all. *Bettor*, at *2; *Bloomgarden*, at *3 (Plaintiff "characterizes his challenge as directed to the lawfulness of the deductions, not the valuation of the loss"). The district courts rejected these arguments, concluding that the case "is undeniably about the actual cash value assigned to the vehicle … this litigation is not about coverage, but about the amount of money owed to [plaintiff] following an unsatisfactory claim adjustment." *Bettor*, at *3; *Bloomgarden*, at *4-5 (declaring legal/coverage argument "untenable" because Plaintiff sought money damages through a "readjustment" of the loss claim). These courts reasoned that the policy required an appraisal panel to resolve any dispute over the amount of loss, and further concluded that dismissal of the complaint was

required because plaintiff failed to comply with the appraisal requirement despite the insurer's demand therefor. *Bettor*, at *5; *Bloomgarden*, at *5.[3]

Like *McGowan*, *Bettor*, and *Bloomgarden*, this litigation "is not about coverage," but rather the amount of money paid to Silva. James River undisputedly covered Silva's claim; simply, Silva disputes only the amount James River paid him for the loss. The James River policy expressly provides for either party to demand appraisal if the parties "cannot agree on the amount of a loss" and James River has demanded such an appraisal. This Court should accordingly compel appraisal as required by the policy.[4]

### III. THE COMPLAINT—INCLUDING THE CLASS CLAIMS—SHOULD BE DISMISSED IN ITS ENTIRETY.

In Florida, "once [an appraisal] clause is appropriately invoked, [appraisal] becomes a condition precedent to the right of the insured to maintain an action on the policy." *U.S. Fire Ins. Co. v. Franko*, 443 So. 2d 170, 172 (Fla. 1st DCA 1983); *see also Martinez*, 643 So. 2d at 1102 ("As with arbitration clauses, appraisal provisions are deemed to be conditions precedent to recovery under the insurance policies."); *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016) (same); *Columbia Cas. Co. v. S. Flapjacks,*

---

[3] In *Bloomgarden*, the district court judge, Darrin Gayles, adopted the report and recommendation of the magistrate judge in full, except that the court found that one count of the complaint should be dismissed without prejudice, rather than with prejudice. *See* 2019 WL 5209015, at *1.

[4] James River has not waived appraisal and its appraisal demand was timely and properly made upon being served with the complaint. *See Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So. 3d 703, 705 (Fla. 4th DCA 2009) (recognizing that "[a]n appraisal clause may be invoked for the first time after litigation has commenced"); *see also*, *Martinez*, 643 So. 2d at 1103 (same). Indeed, *Bloomgarden* and *Bettor* are procedurally identical to this action insofar as they specifically compelled appraisal following removal to federal court. James River has not acted inconsistently with its appraisal rights. This is James River's first substantive appearance in this action. *Cf., Fla. Ins. Guar. v. Reynolds*, 148 So. 3d 840, 841 (Fla. 5th DCA 2014) (insured waived right to appraisal by participating in discovery, seeking and obtaining partial summary judgment, and noticing case for trial before demanding appraisal).

*Inc.*, 868 F.2d 1217, 1219 (11th Cir. 1989) ("Conditioning a party's right to litigate upon compliance with a properly invoked arbitration clause merely enforces a contractual obligation."). Indeed, "[p]ermitting parties to litigate a dispute in court instead of proceeding to [appraisal] … constitutes a departure from the essential requirements of law which cannot be adequately remedied by appeal." *Franko*, 443 So. 2d at 172. As this district cogently explained, once appraisal is invoked, appraisal becomes a "condition precedent to the right of the insured to maintain an action on the policy." *Almeria Park*, 2018 WL 8193773, at *3.

Indeed, Silva's policy expressly requires compliance with the appraisal process as a condition precedent to litigating a dispute against James River. The policy's "Legal Action Against Us" provision states: "No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form." (DE 1-1, pg. 34.) Accordingly, because appraisal is a condition precedent to Silva's right to pursue an action under the policy against James River, Silva's complaint must be dismissed. *See Moore v. Travelers Cos., Inc.*, No. 1:08-CV-1121, 2008 WL 11334078, at *4 (N.D. Ga. Sept. 12, 2008), *aff'd*, 321 Fed. Appx. 911 (11th Cir. 2009) ("Under the terms of [the insured]'s homeowners policy, [the insured] is contractually obligated to comply with the appraisal provision to determine his amount of loss before filing suit. Since no appraisal has taken place to resolve this matter, [the insured]'s Complaint fails to state a claim upon which relief can be granted.").

In addition, Silva's class action claims should likewise be dismissed. *See Moore*, 321 Fed. Appx. at 913 (affirming dismissal of insured's class action complaint based on the appraisal provision of the policy); *McGowan*, 2019 WL WL 5788336, at *4 (dismissing class action lawsuit based on policy's mandatory appraisal provision); *Bloomgarden*, 2019 WL 5209015, at *2 (dismissing putative class action lawsuit based on policy's mandatory appraisal provision);

*Bettor*, 2019 WL 2245564, at *5-6 (dismissing class action lawsuit based on policy's mandatory appraisal provision).

For the same reasons appraisal was required in *Moore*, *McGowan*, *Bloomgarden*, and *Bettor*, it is required here. Those decisions confirm the propriety of dismissing this matter in its entirety. If this Court disagrees that dismissal is required, James River alternatively moves to stay this action pending appraisal. *See, e.g.*, *Almeria Park*, 2018 WL 8193773, at *3 (granting motion to compel appraisal and administratively closing action pending outcome of appraisal); *Gimenez*, 2009 WL 257540, at *2 (granting motion to compel appraisal and staying action); *see also*, *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163, 2016 WL 9526569, at *3 (M.D. Fla. July 29, 2016) (granting motion to compel appraisal and administratively closing action).

## CONCLUSION

This action should have never been filed. For the reasons explained above, James River respectfully requests that this Court compel appraisal and dismiss the complaint or, alternatively, compel appraisal and stay this action pending appraisal.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I CERTIFY that I complied with Local Rule 7.1(a)(3) and conferred with counsel for Silva, and counsel for Silva objects to the relief requested.

Respectfully submitted,

/s/ AARON WARREN
**SINA BAHADORAN**
Florida Bar No: 523364
Sina.Bahadoran@clydeco.us
**AARON WARREN**
Florida Bar No: 96162
Aaron.Warren@Clydeco.us
**SERGIO BUENO**
Florida Bar No: 112401
Sergio.Bueno@clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646

## CERTIFICATE OF SERVICE

I CERTIFY that on November 13, 2019, I e-filed this document using CM/ECF system. I further certify that I am not aware of any non-CM/ECF participants.

/s/ AARON WARREN
**AARON WARREN**
