**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

LUCAS SILVA, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

JAMES RIVER INSURANCE COMPANY, a
Virginia corporation,

    Defendant.
_____/

Case No. 9:19-cv-81442-RLR

CLASS REPRESENTATION

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Lucas Silva ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this Amended Class Action Complaint against Defendant James River Insurance Company ("James River" or "Defendant"), and alleges:

## NATURE OF THE ACTION

1.  This is a class action lawsuit brought by Plaintiff, the named insured under an automobile policy issued by James River for business auto physical damage, including comprehensive and collision coverage (the "Insurance Policy").[1] Under the Insurance Policy, Defendant is required to pay "Actual Cash Value" or "ACV" in the event Plaintiff's insured vehicle is declared a total loss.

2.  James River is a private insurance company that, based upon Plaintiff's information and belief, collects tens of millions of dollars in private-passenger physical damage coverage premiums every year from its insureds. Among other coverages, Defendant offers comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid amounts

---

[1] A true and correct copy of Plaintiff's Insurance Policy is attached hereto as Exhibit A.

that Defendant owed not just to Plaintiff, but to thousands of other members of the putative Class (as fully defined below) for ACV losses for total loss vehicles insured with comprehensive and collision coverage by James River.

3. This lawsuit is brought by Plaintiff, on behalf of himself and all other similarly situated insureds, against James River for damages suffered as a result of Defendant's failure to pay full ACV payments or full total loss payments ("FTLP") to first-party total loss insureds with physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include state and local title transfer and vehicle registration fees, or title and registration transfer fees ("Vehicle Title and Registration Fees"), in its calculation of ACV when paying FTLP to Plaintiff and its insureds.

4. The failure to pay FTLP for first-party total losses owed to its insureds is a breach of its policy agreement and a clear breach of contract under Florida law.

## JURISDICTION AND VENUE

5. Defendant alleges that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

6. Defendant alleges that venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

## PARTIES

7. At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Palm Beach County, Florida.

8. At all times material hereto, Defendant is and was a corporation with a substantial portion of its business being conducted in Palm Beach County.

9. This is an action for breach of contract and declaratory relief for damages.

10. At all times material hereto, Plaintiff was an adult citizen of the State of Florida, residing in Palm Beach County, Florida.

11. Plaintiff and members of the putative class are all insured under Florida policies issued by Defendant.

## FACTUAL ALLEGATIONS

12. Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida.

13. At all times material hereto, Plaintiff owned a 2009 Toyota Corolla XRS, with VIN Number 1NXBE40E19Z018313 (the "Insured Vehicle").

14. At all times material hereto, Plaintiff's Insured Vehicle was covered under the Insurance Policy.

15. Under the Insurance Policy, in the event an insured vehicle is declared a total loss, the payment of ACV includes an obligation to pay Vehicle Title and Registration Fees or FTLP.

16. On or about July 30, 2018, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim with Defendant for property damage, with Claim Number 90061868 (the "Claim").

17. After the Claim was filed, Defendant declared the Insured Vehicle as a total loss and determined that the Insured Vehicle had a base value of $9,042.17 and an adjusted vehicle value of $8,822.21 after subtracting a condition adjustment of $219.96.

18. The base value and adjusted vehicle value were calculated by a third-party vendor,

Mitchell Work Center Total Loss ("Mitchell"). Mitchell's Market Valuation Report (the "Valuation Report") is attached hereto as Exhibit B.

19. No amount for the Vehicle Title and Registration Fees was included in the amount listed in the Valuation Report. Ex. B at 1.

20. Relying on the Valuation Report, Defendant added a total of $579.33 for state and local sales taxes to the Insured Vehicle's adjusted vehicle value, and then subtracted Plaintiff's $1,000.00 deductible, for a total payment amount of $8,401.54, which did not include Vehicle Title and Registration Fees.

21. Defendant's failure to include Vehicle Title and Registration Fees amounts when making the total loss payment to Plaintiff is a breach of the Insurance Policy, which promises to provide the ACV of the total loss vehicle, including Vehicle Title and Registration Fees amounts.

22. Defendant, pursuant to its standard and uniform business practice, never pays its insureds the respective Vehicle Title and Registration Fees owed after an insured vehicle is deemed a total loss.

23. Defendant's failure to pay Vehicle Title and Registration Fees constitutes a breach of the Insurance Policy.

24. Vehicle Title and Registration Fees are mandatory, applicable fees that must be paid to purchase any vehicle in the State of Florida.

25. Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The minimum fee to transfer title to a vehicle in the state of Florida is $75.25.

26. Florida law also requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida' roadways. The fee to initially register a vehicle is $225.00. However, in the event of a total-loss to a registered vehicle, Florida law permits insurers to transfer

4

the existing registration rather than initiate a new registration. The minimum fee to transfer registration in the state of Florida is $4.60.

27. After determining that Plaintiff's Insured Vehicle, as well those of other similarly situated insureds, was a total loss, Defendant owed Vehicle Title and Registration Fees in the amount of $79.85 that were never subsequently paid.

28. In breach of its contract with Plaintiff, Defendant did not include Vehicle Title and Registration Fees in the amount of $79.85 when it made the ACV payment for Plaintiff's FTLP.

29. In doing so, Defendant underpaid Plaintiff in the amount of the mandatory costs and fees necessary to purchase a replacement vehicle, thereby violating its own policy by failing to provide coverage for such mandatory, necessary fees.

30. Plaintiff and all members of the putative Class paid all premiums owed under their respective insurance policies with James River and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused, prior to bringing this action against Defendant.

## JAMES RIVER'S INSURANCE POLICY

31. In Section II of Plaintiff's Insurance Policy, entitled "PHYSICAL DAMAGE COVERAGE," which is representative of the policy language governing the thousands of insureds in the putative Class, Defendant states, in pertinent part, that Defendant "will pay for 'loss' to a covered 'auto'." Ex. A at 2.

32. Under the subsection entitled "Limit of Insurance" in Part II of the Insurance Policy, Defendant states, in pertinent part, that:

The most we will pay for "loss" in any one "accident" is the lesser of:

   a. The actual cash value of the damaged or stolen property as of the tie of "loss"; or
   b. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

Ex. A at 3.

33. The Policy asserts that covered autos are those for which a premium is paid and is listed on the dec sheet.

34. James River does not define ACV in the Insurance Policy or any other policy or provision at issue.

35. Thus, the subject policy language does not further define ACV to include: (1) any provision excluding Vehicle Title and Registration Fees from ACV; or (2) any provision deferring payment of Vehicle Title and Registration Fees for any purpose whatsoever.

36. The Insurance Policy's language applies to all covered automobiles, irrespective of ownership interests—whether the insured vehicles are owned, financed, or leased. Ex. A at 1-2.

## PAYMENT OF MANDATORY FEES

37. Controlling case law from the Florida Supreme Court, Florida's appellate courts, the Eleventh Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an Insurance Policy, should be defined as the repair or replacement cost minus depreciation—a definition that would include the Vehicle Title and Registration Fees necessarily incurred upon replacement of the insured vehicle. *See e.g.*, *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (holding that "[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (quoting Black's Law Dictionary 506, 1690) (9th Ed. 2009); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008) (noting that undefined ACV is calculated as full replacement cost minus depreciation); *Mills v Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that elements like sales tax "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (quoting *Ghoman*

*v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001)); *Roth v. Geico Gen. Ins. Co.*, 16-cv-62942 (S.D. Fla. June 14, 2018), D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); *Bastian v. United Services Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the Eleventh Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus should be included in the calculation of the ACV).

38. In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. *Id.* But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the Insurance Policy is considered ambiguous." *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insured and strictly against the insurer who prepared the policy." *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *See e.g.*, *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565 (Fla. 2nd DCA 1984) (noting that coverage must be construed broadly and exclusions narrowly).

39. Sales tax and Vehicle Title and Registration Fees are examples of elements constituting the FTLP owed to insureds in the event of a total loss.

40. By promising to pay the ACV of insured vehicles, the Policy promises coverage for

title and registration transfer fees (i.e. Vehicle Title and Registration Transfer fees), because such fees are necessary to replace a vehicle in the state of Florida.

41. By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle. Otherwise, the Defendant's insureds, including Plaintiff, are not paid the amount sufficient to purchase a replacement vehicle. Thus, the coverage provided by the Policy requires payment of $79.85 for title and registration transfer fees.

42. Nevertheless, Defendant declined to include such fees in making ACV payments to total loss insureds, thereby breaching its respective contracts with its insureds, including each and every putative Class Member.

43. Plaintiff's disagreements and allegations stated herein, individually and on behalf of the Class, do not concern the amount of loss, nor does Plaintiff contest Defendant's determination that the loss was sufficient to constitute a total-loss. Plaintiff does not contest that ACV is the relevant Policy language.

44. Rather, the disagreement between the Parties concerns simply whether ACV should be interpreted such that it provides coverage for and requires payment of title and registration transfer fees as costs necessary to replace the total-loss vehicle.

## **CLASS REPRESENTATION ALLEGATIONS**

45. Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

46. Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

47. Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

48. Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

49. Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

50. Plaintiff and Plaintiff's counsel will fairly and adequately protect and represent the interests of each member of the class.

51. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

52. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation

makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

53. Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Florida policy issued by James River Insurance Company and its subsidiaries who submitted a first-party claim for property damage where the insured vehicle was determined to be a total loss and whose claim was adjusted as a total loss within the five-year time period prior to the date on which this lawsuit was filed until the date of class certification, and who were not paid Vehicle Title and Registration Fees of at least $79.85 as part of the total-loss claim payment.

54. The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

55. Certification of the above classes is also supported by the following considerations:

    a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;
    b. Counsel in this class action is not aware of any previously filed litigation against Defendant in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and
    c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

56. Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant writes hundreds of millions of dollars of physical damage coverage premiums, the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical.

The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to the Class is established.

57. Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

58. Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

59. Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

60. Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages

suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

## DECLARATORY RELIEF

61. Class treatment is warranted here because Defendant acted or refused to act on grounds generally applicable to all the members of the putative Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

62. Plaintiff believes Defendant's policy promise to pay the ACV of total-loss vehicles includes coverage for title and registration transfer fees as costs necessary to replace the total-loss vehicle. Defendant disagrees with Plaintiff's interpretation.

63. Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief are brought efficiently, provides optimum relief to class members for their past and future injuries, and deters Defendant and other similar businesses from engaging in such wrongful conduct in the future.

64. Because Defendant acted consistently towards Plaintiff and all members of the putative Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

65. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

66. Plaintiff retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Plaintiff, for himself and the putative Class, is entitled

to recover attorney's fees and taxable costs.

## COUNT I
## BREACH OF CONTRACT

67. The allegations in paragraph 1 through 60 are hereby incorporated by reference.

68. This count is brought by Plaintiff on behalf of himself and all members of the putative Class.

69. Plaintiff was party to an enforceable contract, the Insurance Policy, with Defendant as described herein. *See* Ex. A. At all times material hereto, all members of the putative Class were also parties to similar contracts with Defendant that contained materially identical terms to the Insurance Policy.

70. Florida law governs the interpretation and construction of the insurance policies of Plaintiff and all members of the Class with Defendant.

71. Plaintiff and all members of the putative Class made claims that Defendant determined to be covered first party total losses under their perspective insurance policies.

72. Defendant, in paying the total loss claim, determined that Plaintiff and each Class member complied with the terms of their respective insurance contract and fulfilled all duties and conditions under the same that were necessary to be paid on their total loss class.

73. By determining the vehicles to be total-losses, Defendant determined that, under its Policy, Defendant's liability for loss was the ACV of the total-loss vehicle.

74. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class member were owed the ACV of the vehicle.

75. Defendant breached that obligation by failing to include Vehicle Title and Registration Fees as elements ACV, thereby failing to pay the vehicle's ACV to Plaintiff and all members of the Class.

76. Defendant's failure to provide the promised coverage and failure to pay title transfer fees of $75.25 and registration transfer fees of $4.60 constitutes a material breach of contracts with Plaintiff and every Class member.

77. As a result of the foregoing breaches, Plaintiff and the Class members are entitled under Defendant's insurance policies to sums representing the benefits owed for full ACV payment, including Vehicle Title and Registration Fees in the amount of $79.85 (less any amount paid by Defendant for Vehicle Title and Registration Fees), as well as pre-judgment and post-judgment interest, and any other relief the Court deems appropriate.

## COUNT II
## DECLARATORY RELIEF

78. The allegations in paragraph 1 through 66 are hereby incorporated by reference.

79. This count seeks declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

80. This count is brought by Plaintiff on behalf of Plaintiff and all members of the Class.

81. Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein. See Exhibit A. All Class Members were parties to an Insurance Policy contract with Defendant containing materially identical terms.

82. Florida law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

83. Plaintiff seeks a declaratory judgment that an insured is entitled to sales tax and vehicle title and registration fees to pay a vehicle's ACV under the insurance policies that govern Plaintiff's and the class members' contractual relationships with Defendant.

84. Plaintiff contends Defendant is required to pay sales tax and vehicle title and registration fees as part of the payment of a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members relationship with Defendant.

85. Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

86. Because of Defendant's claim to the contrary, Plaintiff is in doubt as to his rights under the Insurance Policy.

87. The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to the vehicle title and registration fees.

88. The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of his right to the vehicle title and registration fees.

89. All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

90. Pursuant to 28 U.S.C. § 2201, Plaintiff and the Class are entitled to a declaration of its right to the sales tax, title transfer and tag transfer fees to resolve their doubt about their rights under the Insurance Policy considering the Defendant's position otherwise.

91. Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will seek supplemental relief pursuant to 28 U.S.C. § 2202 in the form of an order directing that the sales tax and Vehicle Title and Registration Fees be paid to Plaintiff and the Class, an award of attorney's fees incurred in establishing coverage under the Insurance Policy, and pre-judgment interest and post-judgment interest, as the sales tax and Vehicle Title and Registration Fees represents liquidated amounts.

WHEREFORE, the Plaintiff, individually and on behalf of the Class, demands a trial by jury on all triable issues and seeks relief and judgement as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed under the Policies, including $79.85 in Vehicle Title and Registration Fees (less any amount already paid by Defendant for Vehicle Title and Registration Fees);

3. For declaratory relief to be entered for Plaintiff and the Class that her interpretation of the Insurance Policy is correct;

4. For all other damages according to proof;

5. For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. §627.428 and Fla. Stat. §57.041;

6. For costs of suit incurred herein;

7. For pre and post judgment interest on any amounts awarded;

8. For other forms of relief as this Court deems just and proper;

Dated: November 27, 2019

Respectfully Submitted By:

*/s/ Andrew Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Tel (305) 479-2299
Fax: (786) 623-0915

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223
rachel@dapeer.com

**EDELSBERG LAW, P.A.**

Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
2875 NE 191st Street, Suite 703
Aventura, FL 33180
Tel: (305) 975-3320

**NORMAND PLLC**
Jacob L. Phillips, Esq.
FBN: 120130
Edmund A. Normand, Esq.
FBN: 865590
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@ednormand.com
service@normandpllc.com

*Counsel for Plaintiff*