**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

LUCAS SILVA, individually and
on behalf of others similarly situated,

      Plaintiff,

vs.                                              CASE NO: 9:19-cv-81442-RLR

JAMES RIVER INSURANCE COMPANY,
an Ohio Corporation,

      Defendant.
_____/

## JAMES RIVER'S MOTION TO COMPEL APPRAISAL
## AND DISMISS AMENDED CLASS ACTION COMPLAINT

JAMES RIVER INSURANCE COMPANY ("James River"), pursuant to Fed. R. Civ. P. 12(b)(6), moves to compel appraisal as mandated by the insurance policy and dismiss the putative class action complaint (DE 10), or, alternatively, stay this action pending appraisal, and in support states:

## INTRODUCTION

After Silva totaled his car in July 2016, James River made a "total loss" payment in August 2016. Silva accepted the payment and fully settled his claim. Now, over three years later, Silva filed this suit claiming he is owed more. More specifically, Silva brings putative class action claims disputing James River's valuation of the "amount of loss" under the policy. James River invoked its right to appraisal under the insurance contract to address the additional amounts Silva claims he is owed. Because this is a dispute over the "amount of loss," Silva's claims are subject to appraisal.

Three district courts have recently held that identical disputes over the valuation are subject to appraisal. The Eleventh Circuit has also required appraisal under the circumstances.

The terms of the James River policy also compel appraisal. As required under the insurance contract and commensurate with the law, James River respectfully requests this Court enforce the policy's valid and binding appraisal provision.

## PROCEDURAL BACKGROUND

On 9/19/2019, Silva filed his original complaint in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. (DE 1-1.) On 10/23/2019, James River timely removed the action to this Court. (DE 1.) On 11/11/2019, James River sent Silva a letter invoking its contractual right to appraisal. (DE 7-1.) To date and despite repeated requests, Silva has not responded to James River's demand for appraisal under the policy.

On 11/13/2019, James River filed its motion to compel appraisal and dismiss this action; alternatively, James River requested a stay of this action pending appraisal. (DE 7.) On 11/27/2019, Silva filed an amended class action complaint against James River. (DE 10.) The substance of Silva's amended class action complaint is similar to the claims raised in Silva's original class action complaint. The only meaningful difference is Silva's gratuitous allegation that the dispute does "not concern the amount of loss," which is nothing more than a blatant attempt to evade the policy's mandatory appraisal provision. (DE 10, ¶¶43, 44.)

For all the reasons explained below, Silva cannot sidestep the contractual appraisal obligations under the policy. James River accordingly renews its motion to compel appraisal and to dismiss this action.

## STATEMENT OF ALLEGATIONS

On 7/30/2016, Lucas Silva was involved in an accident in his vehicle. (DE 10, ¶16.)[1] Silva reported the accident to James River and filed a claim for property damage under the policy. (*Id.*) James River declared Silva's vehicle a "total loss." (*Id.*, ¶17.) The policy requires payment of the "lesser of" either: a) ACV of the damaged property, or b) the replacement cost of the damaged property. (*Id.*, ¶32.) James River determined that the ACV for Silva's vehicle was $9,401.54. (*Id.*, ¶22.) After subtracting the $1,000 deductible under the policy, James River remitted payment to Silva in the amount of $8,401.54. (*Id.*, ¶20; *see also*, DE 10-1, Pg. 31.)

Silva alleges James River "underpaid" his claim. (DE 10, ¶¶2, 28.) Specifically, Silva claims that that James River's "total loss" valuation is calculated by a third-party vendor, Mitchell Work Center Total Loss ("Mitchell"). (*Id.*, ¶18.) According to Silva, Mitchell creates a "Market Valuation Report" ("Mitchell Report") for James River, which does not include title transfer and vehicle registration fees. (*Id.*, ¶¶18, 19.) Silva claims that James River's payment to Silva and other similarly situated plaintiffs breached the policy by excluding "state and local title transfer and vehicle registration fees, or title and registration transfer fees." (*Id.*, ¶¶3, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29, 41, 42, 53.)

Silva seeks to certify a class of similarly situated James River insureds, and asserts claims for breach of contract and declaratory relief on behalf of himself and the putative class. (*Id.*, ¶¶45-66, 67-77, and 78-91.) Silva also seeks declaratory relief that James River "is required to pay sales tax and vehicle title and registration fees as part of the payment of a vehicle's ACV under the insurance policies." (DE 10, ¶¶78-91.) Silva also seeks an award of attorneys' fees under Fla. Stat. § 627.428. (*Id.*, ¶66, 91 and Pg. 16, ¶5.)

---

[1] Silva mistakenly alleges the year of the accident was 2018, rather than 2016. (*See* DE 10-1, Pgs. 4-5, identifying "listing date[s]" in July 2016, and Pg. 31, identifying the "[d]ate of [l]oss" as "07/30/2016." *See also* DE 10-2, Pg. 2, identifying the "[l]oss [d]ate" as "07/30/2016.")

## THE JAMES RIVER POLICY

James River's payment obligations are governed by the terms of the insurance contract.

In pertinent part, the policy's insuring agreement provides:

### SECTION II – PHYSICAL DAMAGE COVERAGE

**A.    Coverage**

    **1.**    We will pay for "loss" to a covered "auto" or its equipment under:
    …

        **c.    Collision Coverage**

        Caused by:

        **(1)**    The covered "auto's" collision with another object;
        …

(DE 10-1, Pgs. 12-13.) Elsewhere, the James River policy defines its limit of insurance for a covered loss as follows:

### SECTION II – PHYSICAL DAMAGE COVERAGE

**C.    Limit Of Insurance**

    **1.**    The most we will pay for "loss" in any one "accident" is the lesser of:

        **a.**    The actual cash value of the damaged or stolen property as of the time of the "loss";

        **b.**    The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality. …

    **3.**    An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

(DE 10-1, Pg. 14.)

In the event of disagreement over the amount of loss, the policy expressly provides:

**SECTION III – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A.      Loss Conditions**

      **1.      Appraisal**

*If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser.* The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      **a.**      Pay its chosen appraiser; and

      **b.**      Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim. …

(DE 10-1, Pg. 14, bold italics added.) Moreover, the policy explicitly prohibits Silva from filing suit against James River absent full compliance with all policy terms, including the mandatory appraisal requirement:

**SECTION III – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A.      Loss Conditions** …

      **3.      Legal Action Against Us**

No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form.

(DE 10-1, Pg. 15.) Finally, the term "loss" is defined in the policy as "direct and accidental loss or damage." (*Id.*, Pg. 16.)

On 9/19/2019—more than three years after James River paid and settled Silva's claim—Silva filed this action. (DE 1-1, Pg. 2.) On 11/11/2019, James River invoked its right to an appraisal by sending Silva a letter, through his counsel of record in this case, notifying him that it was invoking its right to appraisal as mandated by the policy. A copy of the notice is attached as Exhibit "A." Silva does not and cannot allege that he complied with the policy's appraisal provision.

## ARGUMENT AND CITATION OF AUTHORITY

### I.  THE COURT SHOULD COMPEL SILVA TO PROCEED WITH APPRAISAL, WHICH IS A CONDITION PRECEDENT TO RECOVERY, AND DISMISS SILVA'S ACV CLAIMS.

Appraisal clauses in insurance policies "are valid and binding upon the parties if they are appropriately invoked." *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1202 (Fla. 3d DCA 1995) (citing *New Amsterdam Cas. Co. v. J.H. Blackshear, Inc.*, 156 So. 695, 696 (Fla. 1934)). It is "well-established" that appraisal clauses are treated as "binding arbitration agreements" under Florida law. *Id.* Indeed, the "general, even overwhelming, preference in Florida for the resolution of conflicts [is] through any extra-judicial means … for which the parties have themselves contracted." *Id.* This "principle has particular applicability" in cases "in which a great deal of judicial resources which might otherwise be required in resolving the factual and legal issues … would be saved at the threshold by a relatively swift and informal decision by the appraisers as to the amount of the loss." *Middleton*, 648 So. 2d at 1202. Further, and importantly, "appraisal provisions contained within an insurance contract *are treated as conditions precedent to recovery under the policy*." *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688-CIV, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016) (Snow, Mag. J.), *report and recommendation adopted*, 2016 WL 8793338 (S.D. Fla. Sept. 7, 2016) (Dimitrouleas, J.).

"Florida law recognizes that even though an appraisal clause includes the word 'may,' the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, 'neither party has the right to deny that demand.'" *McGowan v. First Acceptance Ins. Co., Inc.*, ___ F. Supp. 3d ___, 2019 WL 5788336 (M.D. Fla. 2019) (citations omitted) (Bucklew, J.). Accordingly, "[a] motion to compel appraisal should be granted whenever the parties have agreed to appraisal and the court entertains no doubt that such an agreement was made." *Almeria Park Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 18-20609, 2018 WL 8193773, at *3 (S.D. Fla. May 24, 2018) (citations omitted) (Altonaga, J.).

Here, under the clear terms of the insurance policy, Silva and James River agreed to resolve all disputes over the "amount of the 'loss'" by appraisal. The policy expressly provides that if the parties "disagree on the amount of 'loss,'" either party has the right to demand an appraisal, and that "[a] decision agreed to by any two [appraisers] will be binding." (DE 10-1, pg. 14.) Silva's allegations definitively confirm that the parties disagree over the "amount of loss." At the outset, Silva claims that James River improperly valued the "total loss" based on the Mitchell Report. (DE 10, ¶18-19.) Silva suggests that the Mitchell Report does not account for vehicle title fees, registration fees, and other local fees. (*Id.*, ¶¶2, 3, 18, 19.) From there, Silva alleges that James River "systematically underpaid amounts that [James River] owed … to [Silva]," and that James River "underpaid [Silva] in the amount of the mandatory costs and fees necessary to purchase a replacement vehicle." (DE 10, ¶¶ 2, 29.) Accordingly, the crux of this entire action concerns a dispute regarding the "amount of loss" for Silva's claim. Because appraisal is a "condition precedent" to any recovery under the policy, Silva's amended class action complaint should be dismissed in its entirety.

## II.   SILVA'S CLAIM THAT JAMES RIVER UNDERPAID HIS TOTAL LOSS CLAIM IS SUBJECT TO APPRAISAL.

Florida courts have held that "when [an] insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014). Further, under Florida law, "[a]ppraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions which courts may enforce if there is an arbitrable issue." *Giminez v. Am. Sec. Ins. Co.*, No. 8:08-cv-2495, 2009 WL 257540, at *1 (M.D. Fla. Feb. 3, 2009) (citing *U.S. Fid. Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. 3d DCA 1999)) (Bucklew, J.). Importantly, such "arbitrable" issues include questions "of actual cash value and amount of loss." *Giminez*, 2009 WL 257540, at *2.

Several recent Florida courts have compelled appraisal for disputed "total loss" claims under identical circumstances. Most recently, in *McGowan v. First Acceptance, Inc.*, __ F. Supp. 3d __, 2019 WL 5788336 (M.D. Fla. 2019), the district court compelled appraisal and dismissed a putative class action lawsuit that alleged that an insurer underpaid total loss claims by failing to include registration fees, title fees, and sales tax in its payment. There, like here, the policy included a mandatory appraisal provision which provided that "[i]f we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss." *Id.* at *2. Rather than invoke the appraisal provision, the plaintiff filed suit against the insurer. Dismissing the action and compelling appraisal, the *McGowan* court explained that the issue of inclusion of registration fees, title fees, and sales tax "present[s] no coverage issue and only raise questions regarding the amount of loss, [so] that appraisal is the appropriate (and contractually-mandated) mechanism for resolving this dispute." *Id.* at *3. Moreover, construing other conditions of the policy, the court explained that the policy mandated appraisal:

The Policy expressly requires compliance with the appraisal process as a condition precedent to suing [the insurer] over a disputed loss amount. The Policy's "Legal Action Against Us" provision states that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this policy." … And the Policy provides that [the insurer] is not required to make payment for any loss based on damage to the insure automobile unless the insured has fully complied with the Policy terms. … ***Thus, [the insured] cannot maintain his individual claim nor can he purport to represent the interests of the unnamed class members absent compliance with the Policy terms requiring appraisal.***

*Id.* at *4 (emphasis added).[2]

Two identical putative class actions from the Southern District of Florida recently reached the same result. *See Bloomgarden v. Allstate Fire & Cas. Co.*, No. 18-62059, 2019 WL 2245475 (S.D. Fla. Mar. 15, 2019) (Seltzer, Mag. J.), *report and recommendation adopted in part*, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) (Gayles, J.); *Bettor v. Esurance Prop. & Cas. Ins. Co.*, No. 18-61860, 2019 WL 2245564 (S.D. Fla. Mar. 28, 2019) (Seltzer, Mag. J.), *report and recommendation adopted*, 2019 WL 3408900 (S.D. Fla. June 17, 2019) (Moreno, J.). In these cases, like Silva here, the insureds alleged that their insurers improperly valued their "total loss" claims by excluding certain elements of coverage—namely, dealer overhead and profits. The relevant appraisal provisions in *Bettor* and *Bloomgarden* were identical to those in James River's policy. In both cases, the district court relied on *Moore v. Travelers*, 321 Fed. Appx. 911 (11th Cir. 2009), which affirmed an order compelling appraisal and dismissing a putative class action where the plaintiff alleged that an insurer wrongfully withheld contractor costs from ACV payments in a homeowner's policy dispute. The Eleventh Circuit held that an identical appraisal provision required the insured "to first comply with the appraisal provision to determine his amount of loss." *Moore*, 321 Fed. Appx. at 913. Because the dispute over "amount

---

[2] Counsel for the insured in *McGowan* is the same counsel representing Silva here. Silva's accident occurred in Seminole County, Florida, which means the Middle District of Florida, where *McGowan* was decided. Curiously, this action was filed in Palm Beach County, Florida.

of loss" triggered the policy's appraisal provision and the insured had not complied with appraisal, his "complaint fail[ed] to state a claim for which relief can be granted." *Id.*

Notably, the *Bettor* and *Bloomgarden* plaintiffs argued—like Silva will undoubtedly argue here—that the dispute was outside the appraisal provision because it presented a "coverage question" of whether the deductions could be taken at all. *Bettor*, 2019 WL 2245564 at *2; *Bloomgarden*, 2019 WL 2245475 at *3 (the insured "characterizes his challenge as directed to the lawfulness of the deductions, not the valuation of the loss"). The district courts rejected these arguments, concluding that the case "is undeniably about the actual cash value assigned to the vehicle … this litigation is not about coverage, but about the amount of money owed to [plaintiff] following an unsatisfactory claim adjustment." *Bettor*, 2019 WL 2245564 at *3; *Bloomgarden*, 2019 WL 2245475 at *4-5 (declaring the coverage argument proposition "untenable" because the insured sought money damages through a "readjustment" of the loss claim). These courts properly reasoned that the policy required an appraisal panel to resolve any dispute over the "amount of loss," and further concluded that dismissal was warranted because the insured failed to comply with the appraisal requirement despite the insurer's timely demand. *Bettor*, 2019 WL 2245564 at *5; *Bloomgarden*, 2019 WL 2245475  at *5 ("[the insured] has not met his burden to demonstrate that the condition precedent has been satisfied," and his opposition "implicitly concedes appraisal has not occurred").[3]

---

[3] In *Bettor*, District Court Judge Federico Moreno adopted the report and recommendation, holding that "this case is about the amount of money owed to [the insured] following his claim adjustment. There is no dispute that [the insurer] covered the claim, and the issue is the value of [the insured]'s automobile." *See* 2019 WL 3408900, at *1. In *Bloomgarden*, District Court Judge Darrin Gayles likewise adopted the report and recommendation of the magistrate judge, except that the court found that one count of the complaint should be dismissed without prejudice, rather than with prejudice. *See* 2019 WL 5209015, at *1.

*McGowan*, *Bettor*, and *Bloomgarden* are hardly unique, particularly in this District. *See Almeria Park Condo. Ass'n v. Empire Indem. Ins. Co.*, No. 18-20609, 2018 WL 8193773, at *4 (S.D. Fla. May 24, 2018) ("[W]hile [the insured] contends appraisal is precluded because the parties dispute coverage as to numerous areas of loss identified by [the insured] …[the insurer] takes the position appraisal is appropriate because it has only partially denied coverage, but has not disclaimed coverage as a whole … [the insurer] has the better view.") (Altonaga, J.); *Arvat Corp. v. Scottsdale Ins. Co.*, No. 14-22774, 2015 WL 6504587, at *2 (S.D. Fla. Oct. 28, 2015) ("[The insurer] admitted that there is a covered loss for some of the damage. In fact, [the insurer] paid [the insured] $24,356.51. However the parties dispute the amount of loss attributable to water damage (a covered cause) and that attributable to wear, tear, and and/or deterioration (an excluded cause). Accordingly, this is a dispute over the *amount* of covered damage. An appraiser is in the best position to determine a fair value for the covered damage.") (emphasis in original) (Gayles, J.).

Like *McGowan*, *Bettor*, *Bloomgarden*, *Moore*, *Almeria*, *Arvat*, and a slew of other cases enforcing appraisal provisions, this litigation "is not about coverage," but rather the amount of money paid to Silva. James River undisputedly covered Silva's claim; simply, Silva disputes only the amount James River paid him for the loss. Silva cannot now avoid the mandatory appraisal provision by "characterize[ing] the dispute as a disagreement over the method of valuation, rather than the amount of loss," because the crux of the dispute is a disagreement "as to the actual cash value or amount of loss." *Bloomgarden*, 2019 WL 2245475, at *4. The James River policy expressly provides for either party to demand appraisal if the parties "cannot agree on the amount of a 'loss,'" and James River has demanded such an appraisal in accordance with

the terms of the policy. This Court should accordingly compel appraisal as required by the policy.[4]

## III.     THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY.

In Florida, "once [an appraisal] clause is appropriately invoked, [appraisal] becomes a condition precedent to the right of the insured to maintain an action on the policy." *U.S. Fire Ins. Co. v. Franko*, 443 So. 2d 170, 172 (Fla. 1st DCA 1983); *see also Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994) ("As with arbitration clauses, appraisal provisions are deemed to be conditions precedent to recovery under the insurance policies."); *J&E Invs., LLC v. Scottsdale Ins. Co.*, No. 16-61688, 2016 WL 8793337, at *2 (S.D. Fla. Aug. 18, 2016) (same) (Snow, Mag. J.); *Columbia Cas. Co. v. S. Flapjacks, Inc.*, 868 F.2d 1217, 1219 (11th Cir. 1989) (applying Florida law) ("Conditioning a party's right to litigate upon compliance with a properly invoked arbitration clause merely enforces a contractual obligation."). Indeed, "[p]ermitting parties to litigate a dispute in court instead of proceeding to [appraisal] … constitutes a departure from the essential requirements of law which cannot be adequately remedied by appeal." *Franko*, 443 So. 2d at 172. As this district cogently explained, once appraisal is invoked, appraisal becomes a "condition precedent to the right of the insured to maintain an action on the policy." *Almeria Park*, 2018 WL 8193773, at *3.

---

[4] James River has not waived appraisal and its appraisal demand was timely and properly made upon being served with the complaint. *See Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So. 3d 703, 705 (Fla. 4th DCA 2009) (recognizing that "[a]n appraisal clause may be invoked for the first time after litigation has commenced"). Indeed, *Bloomgarden* and *Bettor* are procedurally identical to this action insofar as they specifically compelled appraisal following removal to federal court. James River has not acted inconsistently with its appraisal rights. James River's only substantive appearances in this action seek appraisal. *Cf., Fla. Ins. Guar. v. Reynolds*, 148 So. 3d 840, 841 (Fla. 5th DCA 2014) (insured waived right to appraisal by participating in discovery, seeking and obtaining partial summary judgment, and noticing case for trial before demanding appraisal).

Indeed, Silva's policy expressly requires compliance with the appraisal process as a condition precedent to litigating a dispute against James River. The policy's "Legal Action Against Us" provision states: "No one may bring a legal action against us under this coverage form until there has been full compliance with all the terms of this coverage form." (DE 1-1, pg. 34.) Accordingly, because appraisal is a condition precedent to Silva's right to pursue an action under the policy against James River, Silva's complaint must be dismissed. *See Moore v. Travelers Cos., Inc.*, No. 1:08-CV-1121, 2008 WL 11334078, at *4 (N.D. Ga. Sept. 12, 2008), *aff'd*, 321 Fed. Appx. 911 (11th Cir. 2009) ("Under the terms of [the insured]'s homeowners policy, [the insured] is contractually obligated to comply with the appraisal provision to determine his amount of loss before filing suit. Since no appraisal has taken place to resolve this matter, [the insured]'s Complaint fails to state a claim upon which relief can be granted.").

In addition, Silva's class action claims should likewise be dismissed. *See Moore*, 321 Fed. Appx. at 913 (affirming dismissal of insured's class action complaint based on the appraisal provision of the policy); *McGowan*, 2019 WL WL 5788336, at *4 (dismissing class action lawsuit based on policy's mandatory appraisal provision); *Bloomgarden*, 2019 WL 5209015, at *2 (dismissing putative class action lawsuit based on policy's mandatory appraisal provision); *Bettor*, 2019 WL 2245564, at *5-6 (dismissing class action lawsuit based on policy's mandatory appraisal provision).

For the same reasons appraisal was required in *Moore*, *McGowan*, *Bloomgarden*, and *Bettor*, it is required here. Those decisions confirm the propriety of dismissing this matter in its entirety. If this Court disagrees that dismissal is required, James River alternatively moves to stay this action pending appraisal. *See, e.g.*, *Almeria Park*, 2018 WL 8193773, at *3 (granting motion to compel appraisal and administratively closing action pending outcome of appraisal);

*Gimenez*, 2009 WL 257540, at \*2 (granting motion to compel appraisal and staying action); *see also*, *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163, 2016 WL 9526569, at \*3 (M.D. Fla. July 29, 2016) (granting motion to compel appraisal and administratively closing action) (Kovachevich, J.).

## <u>CONCLUSION</u>

This action should have never been filed. For the reasons explained above, James River respectfully requests that this Court compel appraisal and dismiss the amended complaint or, alternatively, compel appraisal and stay this action pending appraisal.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

I CERTIFY that I complied with Local Rule 7.1(a)(3) and conferred with counsel for Silva, and counsel for Silva objects to the relief requested.

Respectfully submitted,

/s/ AARON WARREN
**SINA BAHADORAN**
Florida Bar No: 523364
Sina.Bahadoran@clydeco.us
**AARON WARREN**
Florida Bar No: 96162
Aaron.Warren@Clydeco.us
**SERGIO BUENO**
Florida Bar No: 112401
Sergio.Bueno@clydeco.us

CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
T: 305.446.2646

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on December 11, 2019, I e-filed this document using CM/ECF system.

I further certify that I am not aware of any non-CM/ECF participants.

<u>/s/ AARON WARREN</u>
**AARON WARREN**